# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

SCOTT W. ECKERT, )
 )
      Petitioner, )
 )
vs. ) Case No. 14-1112-CV-W-ODS-P
 )
TROY STEELE, )
 )
      Respondent. )

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the Potosi Correctional Center in Mineral Point, Missouri, has filed *pro se* a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2009 convictions of forcible rape, first-degree statutory rape, tampering with physical evidence, and two counts of endangering the welfare of a child which were entered in the Circuit Court of DeKalb County, Missouri.

Petitioner asserts four (4) grounds for relief: (1) the trial court erred in overruling petitioner's objection to the State's cross-examination of petitioner about pornography found in his house; (2) the trial court erred in admitting a video-taped deposition of the victim in lieu of her live testimony; (3) ineffective assistance of trial counsel for opening the door to the State cross-examining petitioner about the pornography found at his house during a police search; and (4) ineffective assistance of trial counsel for inappropriately cross-examining the victim during a deposition. Doc. No. 1, pp. 5-6, 8, 10. Respondent contends that Grounds 1 and 4 are procedurally barred and that Grounds 2 and 3 are without merit.

## FACTUAL BACKGROUND

In affirming petitioner's conviction and sentence, the Missouri Court of Appeals, Western

District, set forth the following facts:

> At the time of the incident giving rise to [petitioner]'s conviction, [petitioner] lived in Chula, Missouri, with his girlfriend, Jacqui, and three children, one of whom was Jacqui's seven-year-old daughter, B.M. On May 3, 2007, while Jacqui was working an evening shift, [petitioner] picked B.M. up from the babysitter and returned to the family home. Soon after Jacqui came home from work at about 9:45 p.m., B.M. got out of bed and hurried to the bathroom. Jacqui followed her in after noticing a large amount of blood on B.M.'s pajama bottoms. Jacqui called 911 soon thereafter, and the responding EMTs found B.M. unresponsive, covered in blood, and slumped over the toilet. B.M. was taken to the local hospital in Chillicothe and then transported to Children's Mercy Hospital in Kansas City.
>
> The emergency room physician at Children's Mercy testified that B.M. had suffered a life-threatening vaginal laceration which required blood transfusions equal to her entire blood volume. The surgeon who repaired the injury described it as a forcible penetrating injury consistent with sexual assault. B.M. also had bruises on her chest, shoulders, and spinal column.
>
> In a search of the [petitioner's] home, local law enforcement discovered a mixed blood-and-semen stain on the master bedroom mattress. Testing found DNA belonging to B.M. in the blood fraction of the stain and DNA belonging to [petitioner] in the sperm fraction. In a written statement, [petitioner] told the sheriff that he was alone with B.M. and his younger daughter that night and that no one came or went from the house until Jacqui returned. [Petitioner] was arrested on May 8, 2007. He later claimed that he thought someone had broken in and raped B.M., but there was no sign of forced entry.
>
> B.M. testified in deposition that [petitioner] had come into the master bedroom where she was lying on the bed and asked her to pull down her pants. She said that [petitioner] then put his "front piece" inside her, causing her to bleed.
>
> The State filed a pretrial motion to allow introduction of B.M.'s videotaped deposition in lieu of live testimony on the grounds that B.M. would be unavailable as a witness due to the significant emotional or psychological trauma that would result from her testifying in the presence of [petitioner]. [Petitioner]'s counsel had been present during the deposition and had had the opportunity to question B.M., but [petitioner] was not present. During the hearing on this motion and at trial, B.M's counselor, a clinical social worker who was licensed in Missouri and had nine years of experience, testified that "it would be emotionally traumatic" for B.M. to have to come into court and face [petitioner] and that in prior conversations with the counselor, B.M. often experienced anxiety and suffered emotional outbursts. The court admitted the deposition over [petitioner]'s objection.

2

> [Petitioner] made a pretrial oral motion in limine seeking to prevent the introduction of pornographic books and videos that were discovered in a search of his home. The trial court sustained the motion in limine. However, after defense counsel asked [petitioner] at trial whether he had any "predilection toward kiddy porn, or anything like that" and [petitioner] described his sexual relationship with his girlfriend as "nothing too out of the ordinary," the trial court found that the defense had opened the door to questioning about the books and videos, and it permitted the State to cross-examine [petitioner] about the material.

Resp. Ex. E, pp. 4-6.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. *Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. en banc), *cert. denied*, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## **PROCEDURAL DEFAULT**

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." *Sloan v. Delo*, 54 F.3d 1371, 1381 (8th Cir. 1995), *cert. denied*, 516 U.S. 1056 (1996). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

3

established appellate review process" before presenting those issues in an application for habeas relief in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." *Sloan*, 54 F.3d at 1381.

In Ground 1, petitioner contends that the trial court erred in overruling his objection to the State's cross-examination of petitioner about pornography found in his house. Doc. No. 1, p. 5. Petitioner objected to the evidence at trial but did not include the claim in his motion for new trial. Resp. Ex. B, p. 204. The Missouri Court of Appeals, Western District, found that the trial court's decision to allow cross-examination into petitioner's possession of pornography did not rise to the level of plain error. Resp. Ex. E, pp. 8-10. Nevertheless, a state court's discretionary review for plain error does not excuse the procedural default of an unpreserved claim. *Clark v. Bertsch*, 780 F.3d 873, 875-77 (8th Cir. 2015) (citing *Hayes v. Lockhart*, 766 F.2d 1247, 1253 (8th Cir. 1985).

In Ground 4, petitioner contends that he received ineffective assistance of counsel because counsel cross-examined the victim during the deposition. Doc. No. 1, p. 10. Petitioner presented this claim in his amended Rule 29.15 motion (Resp. Ex. F, p. 21) but did not present it in his Rule 29.15 appeal (Resp. Ex. H). As such, Grounds 1 and 4 are procedurally defaulted. *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997) (recognizing that failure to present claims in the Missouri Courts at any stage of direct appeal or post-conviction proceedings is a procedural default), *cert. denied*, 523 U.S. 1010 (1998).

A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal

4

law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner fails to assert cause for his procedural default. Petitioner fails also to show that a fundamental miscarriage of justice will result if his defaulted claims are not considered. *See Abdi v. Hatch*, 450 F.3d 334, 338 (8th Cir. 2006) (petitioner must present new evidence that affirmatively demonstrates that he is actually innocent of the crime for which he was convicted in order to fit within the fundamental miscarriage of justice exception), *cert. denied,* 549 U.S. 1036 (2006). As a result, Grounds 1 and 4 will be dismissed.

## **GROUND 2**

In Ground 2, petitioner contends that the trial court erred in admitting the video-taped deposition of the victim in lieu of her live testimony. Doc. No. 1, p. 6. The Missouri Court of Appeals, Western District, affirmed the trial court's determination that use of the deposition was necessary due to the trauma in-court testimony would cause the victim, as follows:

> The State's expert testimony regarding the ability of B.M. to face [petitioner] in court came from Jane Wilmes, a clinical social worker licensed in Missouri. Her specialty was working with abused and neglected children, and she had nine years of experience. In addition, Wilmes had met with B.M. on thirty-four occasions for individual counseling sessions. When asked during a hearing on the admissibility of the videotaped deposition if B.M. would suffer "significant emotional or psychological trauma" if she were to testify in the presence of [petitioner], Wilmes responded, "Yes." And at trial, when asked the same question on redirect, Wilmes declared, "I have no doubt [about it]." Wilmes testified that her opinion was based upon numerous clinical observations wherein she noticed that B.M. suffered from extreme emotion outbursts – behavior consistent with that of a child who has been molested. Wilmes also testified that they had "code words" to make it easier for B.M. to testify about the rape and that when their conversations veered in the direction of rape, it often caused B.M. anxiety and triggered her to use their "code word."

Resp. Ex. B, p. 5.

"Although 'the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial,' this preference 'must occasionally give way to considerations of public policy and the necessities of the case.'" *LaBayre v. Iowa*, 97 F.3d 1061, 1062 (8th Cir. 1996) (quoting *Maryland v. Craig,* 497 U.S. 836, 849 (1990)). "The Supreme Court has specifically held that a state's interest in protecting a child witness from the trauma of testifying in a child sexual abuse case may justify the use of special procedures [that allow] the child to testify without confronting the defendant face-to-face." *Id*. In order to utilize these special procedures, "the trial court must hear evidence and make a case-specific finding that the use of a special procedure is necessary to protect the welfare of the particular child. . . ." *Id*. (internal quotation omitted). Further, the trial court must find that testifying in the defendant's presence would traumatize the child beyond "mere nervousness, excitement, or some reluctance to testify." *LaBayre*, 97 F.3d at 1062 (citing *Craig*, 497 U.S. at 856).

Ms. Wilmes testified at trial that "it would be emotionally traumatic" for B.M. to "come into court and face" petitioner. Tr. 1609. She based this opinion on the fact that B.M. had not fully disclosed what had happened for at least two years. Tr. 1609. Ms. Wilmes said that the trauma already endured by B.M. would be exacerbated if she had to face petitioner in court. Tr. 1609. She said also that B.M. suffered from "emotional outbursts" and was "very clingy" with her mother, while at other times she would push her mother away. Tr. 1610. She testified that these behaviors are consistent with a molested child dealing with extreme emotions. Tr. 1610.

The trial court made the required findings that the use of a videotaped deposition was necessary to protect the welfare of B.M. and that in-court testimony could result in a traumatizing experience. *See LaBayre*, 97 F.3d at 1062. As such, the Missouri Court of Appeals' denial of

6

Case 4:14-cv-01112-ODS    Document 22    Filed 04/28/15    Page 6 of 9

petitioner's claim did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. §2254(d)(1) and (2); Mo. Rev. Stat. § 558.021(1)(3). Ground 2 will be denied.

## GROUND 3

In Ground 3, petitioner contends that he received ineffective assistance of trial counsel in that counsel's direct examination of petitioner opened the door for the State to cross-examine him about the pornography found at his house during a police search. Doc. No. 1, p. 8. In order for petitioner to successfully assert a claim for ineffective assistance of counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in *Strickland*." *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999), *cert. denied*, 530 U.S. 1265 (2000).

"A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

7

The Missouri Court of Appeal, Western District, denied Ground 3 as follows:

> Counsel denied that he was attempting to open the door for introduction of the adult pornography evidence during his direct examination of [petitioner] but was only "trying to thread the needle." He said he believed he did this by "narrow[ing]" his question to "kiddy porn." He explained that he asked [petitioner] about his relationship with the victim's mother because he wanted the jury to understand that he had a "robust adult sexual relationship" and did not "have any unfulfilled needs that he needed to take out by raping a seven-year-old child." He stressed that he wanted to introduce testimony showing that [petitioner] had "no interest in anything to do with kids" while "still outside the scope of the adult porn that had been excluded." Counsel explained that he strenuously argued that he had not opened the door and continued to object to any testimony regarding the pornography. He also believed that "the whole issue was rehabilitated" during his redirect during examination of [petitioner].
>
> . . . .
>
> The motion court did not clearly err in finding that counsel's decision to question [petitioner] regarding his sexual relationship with the victim's mother was reasonable trial strategy. The record shows that part of the defense was to focus on the relationship of [petitioner] and the victim's mother. Counsel testified that he wished to demonstrate that [petitioner] had an active sex life with an adult female, his soon-to-be-wife, and that he would have no inclination to have sexual contact with a child. The record also shows that counsel tried to "thread the needle" to avoid opening the door to the introduction of the adult pornography evidence by narrowing his question to "kiddy porn." That the tactic was unsuccessful did not render counsel's strategy unreasonable. The point is denied

(Respondent's Exhibit J, pp. 5-6, 7-8)

The decision of the Missouri Court of Appeals is reasonable and therefore is entitled to deference under § 2254(d). Trial counsel's decision to question petitioner about his sex life can be considered a matter of trial strategy. In *Blackmon v. White*, 825 F.2d 1263, 1265 (8th Cir. 1987), the United States Court of Appeals for the Eighth Circuit stated that "the courts must resist the temptation to second-guess a lawyer's trial strategy; the lawyer makes choices based on the law as it appears at the time, the facts as disclosed . . . and his best judgment as to the attitudes and sympathies of judge and jury." *See also Shaw v. U.S.*, 24 F.3d 1040, 1042 (8th Cir. 1994) (trial

8

counsel's reasonable trial strategies cannot constitute ineffective assistance, even if they are unsuccessful); *Henderson v. Norris*, 118 F.3d 1283, 1287-88 (8th Cir. 1997) (matters of trial strategy presumed correct), *cert. denied*, 522 U.S. 1129 (1998).

Because the state courts' determinations did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. §2254(d)(1) and (2), Ground 3 will be denied.

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied; and

(2) this case is dismissed with prejudice.

  /s/ Ortrie D. Smith
ORTRIE D. SMITH
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: <u>April 28, 2015</u>.